There are essentially two issues that are at the heart of this case and really set the stage for the legal issues on the merits. The first is, what did Congress and the VA expect that veteran claimants could be reasonably expected to do in connection with perfecting their appeals to the Board? And the second is, what information does the Board really require in performing its statutory duty to decide the appeal and its statutory duty to develop the veteran's claim to the optimum? And I think those are the two questions that I'd like to use as a framework for the discussion about the text, the legislative history of the statute, as well as the Board's duty to develop the claim. In this case, the VA adjudicated only one claim, Mr. Ortiz's 1979 claim to reopen. That claim was decided on the basis of the Board's resolution of one issue, whether or not there was new material evidence in support of the claim to reopen. The VA's resolution of that issue was based on one contention, that the evidence submitted was cumulative and repetitious of the other record in the evidence, of the other evidence of record. Can I just ask you to back up a moment? It must be under the statute that the Board, under some circumstances, can dismiss an appeal for failure to set forth the allegations in sufficient specificity, right? Because that's what the statute says. Yes. So Congress did contemplate, I think it's clear from the statute, a category of appeals for which the veteran would assume the risk that the Board would exercise a discretion to dismiss the appeal. And basically what you're saying is that in this case, it would have been, what, an abuse of discretion for the Board to dismiss this appeal on that ground? We are saying two things. First, as a matter of statutory interpretation, that the Veterans Court required Mr. Ortiz to allege arguments and theories of error. In every case, you're saying? The way the Veterans Court construed the statute was that in every case, you had to set forth the allegations, and if you didn't do that, you had failed to file the required notice of appeal. And you say that can't be true because the statute says the Board may dismiss under some circumstances. Correct? No? I think that's half of our argument, and so, yes, our view, and I think this is supported by the text and the legislative history of the statute, is that the statute nowhere requires arguments or theories of error or explanations of the basis for the RO's decision, or explanations of why there's an error in the RO's decision. And that's what the Veterans Court, I think, if they're reading— It doesn't properly result in a dismissal of the appeal, right? Correct. And in this case— Sorry? So, you're saying in this case, it would be an abuse of discretion to dismiss the appeal on that ground? In this case, the Board's discretion was never triggered because the statute does not require arguments or theories of error, and all it requires is that there be an allegation of error as to one or more of the issues that was decided. But why shouldn't the Board, in the subsequent case, exercise its discretion and determine whether the original appeal would have been dismissed for failure to satisfy the allegation standard? In other words, if this had come up originally, and the Board had considered the appeal papers as potentially being a sufficient appeal, right, then the Board might have had discretion to consider whether to dismiss the appeal for failure to set forth the allegations, right? You would argue that there would be an abuse of discretion to dismiss that appeal, but at least they would have the authority to consider it. I think we would also argue in that case that Mr. Rivera had alleged error. Sure. And that the Board had no discretion under those circumstances. Right. I understand. But what you're saying is that since the Board at the time didn't make a determination as to whether to dismiss the appeal under the statute, it is too late now for the Board to come back and say, if we had considered this at the time, we would have found that this didn't satisfy the statute, and we would have dismissed the appeal, therefore, harmless error or something like that. You say they can't do that now. That is not expressed in our briefs, but I think that that would be a fair reading of what happened, and certainly one of the dissents in the Veterans Court made exactly that point, which is that the Board cannot now come in and exercise it, entertain the appeal documents and adjudicate whether or not there was an allegation of error, and then exercise its discretion 20 years or so after the fact. Now, there's also a question as to whether they did that or not. That's correct. That's right. Because there's no, in the Board's decision, I think one of the cornerstones of administrative review is a statement of reasons, and there's no indication in the record below that the Board was exercising it, if it was exercising its discretion at all, and then why it did so. This question relates closely to the exchange that you and Judge Dyk have just had, but I want to make sure I understand just what your position is with respect to the scope of the Board's authority to dismiss an appeal. Setting aside for a moment all of the various policy arguments and the general background of the paternalistic and claimant-friendly system that we have, the two specific provisions of the statute do not sound particularly claimant-friendly when you read them. The first in, I guess it's Section D3, says the appeal should set out specific allegations of error of factor law, such allegations related to specific items in the statement of the case, and then, of course, the section that we've been talking about, that the Board may dismiss any appeal which fails to allege specific error of factor law. The use of the term specific suggests at least a connection between those two, and I'm wondering how you view, give me an example of a kind of case in which you think that lack of specificity in the appeal would justify a dismissal. I believe this is laid out in our briefs, and so I would revert to that. Essentially our view of what the word specific means in the statute, it begs the question of specificity with respect to what, and our view is that the allegation of error must be with respect to an issue that was decided below. So a case in which there were multiple issues and multiple claims that were adjudicated by the RO in the first instance, the Board may, in that case, when there's no specific allegation of error with respect to any one of those issues, then the Board in that case may, in that case, that may trigger the Board's discretion. Okay, that's what I understand your position to be. So if you have a one issue case, then an appeal could simply say, I want to appeal the resolution against me, because we know with specificity in that setting, since there was only one issue decided, one referred to in the statement of the case, I take it your position is that's enough, right? That is exactly our position. Now if you have a multiple issue case, and you say, I want to appeal all of the issues, likewise I take it that would be sufficient, because the Board knows there were six issues identified in the statement of the case, you use the word all and you're done, right?  In fact, Robinson was exactly that case. So the 1-9 form has a place where you can check all, I take it? The 1-9 form has evolved over time. Right. And so the most recent iteration of the form actually does have a checkbox that says, I appeal all issues. Right. And the CAVC recently held that the checking that box operates, is sufficient to appeal all the issues. And you're done. That's right. That's evidence. Now. That is evidence. As a follow-up to Judge Garza's question, so what you're saying is that you're just simply taking the position on the one end of the spectrum, that where there's a single issue case that discretion cannot be exercised, but you're not addressing the rest of the spectrum, unlike the amicus brief, you're not addressing whether or not there should be standards relating to the rest of the spectrum. Correct. I'm always wary to say, that's not this case. But yes, this case is a one issue, one claim, one issue, one argument case. The claim to reopen, whether or not new and material evidence was submitted, cumulative and repetitious evidence of the evidence in the record. And that's all that's at issue in this case. But it's not, as a follow-up to Judge Dyke, you're not asking us to do an abusive discretion review. You're asking us to say that it's a statutory interpretation matter. They can't even go there. Is that right? That's correct. That's correct. That the board discretion was not triggered. I can understand that argument. What troubles me is the other, broader argument, that it's too late. Even, let's suppose we had a multiple issue statement of the case. There was no checking of the box that they're appealing all of the things. And then there's a contention later on that this is non-final because there was never any treatment of the appeal. I mean, under those circumstances, it seems to me that it's a fairly broad argument to say that it's too late for the board to exercise its discretion later on and to say that this appeal wasn't sufficient, therefore we don't have to worry about the question of finality. Do you understand what I'm saying? I do. And I think the lateness of the board's exercise of its discretion does not, as the dissent suggests in the Enbank case below, decision below, does not affect whether or not the initial claim was pending. So the claim remained pending throughout the period is, I think, the critical piece of that argument. Because you're saying the claim remained pending because there was no action of the board dismissing the appeal. Correct. That's the argument that concerns me because that means that in every single case, no matter how inadequate the appeal, it's going to remain pending because there wasn't any action by the board dismissing it. Right. And that is, with respect, due to the failure of the board to either the RO not to forward the appeal papers to the board, or the board to not act on those papers, or the board to not explain the basis for its decision, or the board to not... Go ahead. Sorry. Well, I was just going to say that that's where the somewhat odd posture of this case starts to come into play, and it seems to me creates some difficulty. This is not the typical case in which somebody files the form, the 1-9, and the board would say, well, that's insufficient, and therefore we dismiss. Presumably. I don't know what the process is, but presumably that's what would happen in a case in which the 1-9 is put in review and deemed to be insufficient. This is the case where, for whatever reason, the 1-9 either was lost, or got lost in the mail, or never sent, or whatever, but we're dealing with a set of collateral documents and trying to say whether those collateral documents constitute enough. That's problem number one. And then problem number two is the board's reaction to the... is to say, if you don't send the 1-9, then we will simply allow the case to be deemed over, and so there's no order that follows that says, now we're entering an order dismissing the appeal. It seems to me, are you suggesting that in that kind of setting, following up on Judge Gershwin's case, that that case stays open forever? In that case... First, if I could just address the factual set-up. Sure. In that the facts of the case are not only that there was not an order dismissing the case, there was not also an order, as statutorily required at the time, for the RO simply to forward the documents to the board. So there are two defects here. So one, the RO could have dismissed outright. The other thing it could have done is send it to the board, and it didn't either. And I think once it had gone to the board, the third step would have been for the board to look at the documents, analyze the sufficiency of the allegations, and then, depending on the sufficiency of the allegations, exercise discretion to dismiss or not dismiss. None of those steps occurred in this case. And I think that is to the core of what Judge Steik was referring to, that my response would be that there are multiple steps that did not occur in this case that left the claim pending and open. Okay. Why don't we hear from the judgment, and we will give you several minutes of rebuttal time. May it please the Court. Part of the problem with some of the procedural history of this case, of course, is that there was a delay of 25 years before the board got it. What you need to recall, though, that in 1980, the issue really wasn't adequacy. The adequacy prong of what the board eventually did in 2005 was really timeliness. The RO, in their mind, hadn't received anything and kept asking for something and never got it. So when the issue gets raised again 20-some years later, then the question is raised, well, what they did receive, was that adequate? And that's when the board looked at it under the statute for adequacy. But stepping back to the beginning of the exchange this morning. I think it would be helpful to address this case on the assumption that the exchange of correspondence, it is pro se. I mean, there is general law that notices of appeal should be liberally construed. And, you know, let's assume that the correspondence is sufficient to indicate his desire to appeal. And that the sole question here is whether the correspondence was sufficient to satisfy whatever standard there is in the statute as to the specificity of the allegations. Judge Dyke, your opening questions I think were, I wish I could write my brief again. But it seems to me what's triggered here is the question of whether or not the board abused its discretion in dismissing this appeal. That is what Congress gave the board authority to do. And that sort of answers some of the questions. Well, it's not whether they abused their, they never dismissed the appeal. What they said later on was that the notice of appeal wasn't adequate. Right, but what the board was doing was saying, essentially, if we had confronted this issue in 1980, we would consider the case, we would have dismissed the appeal. Right. And I think there's a problem with that as I read the board decision. Because I read that as saying that this kind of correspondence isn't sufficient to trigger an appeal because they didn't file, he didn't file a form or a document like the form. That seems to me to be pretty questionable. I mean, I think, I would respectfully disagree. I think the statute provides the board with the discretion to dismiss an appeal which lacks specificity. Well, that's a different question. I don't read the board's decision as saying that. What I read the board as saying is that he didn't file the right document, not that the correspondence lacked specificity. Maybe I'm mistaken in the way I read the board decision, but that was what I read them as saying. Well, I mean, we believe that the board and the Veterans Court, although the Veterans Court may have been operating under a more exacting standard of review, in this case it sort of benefits the situation in that they did conclude at page 10 of their decision that the document lacked specificity. There was a failure to identify any allegations of error. And, in fact, If the letter had just had, what, another word or two in it, that would have been enough? Possibly. But that's not really what the board said. The board said they needed the form, didn't they? The board focused on the form, but it's well established that, and it certainly was well established in 2005, that VA Form 19 is not necessarily required. What's required is either the VA Form 19 or some similar document, but which contains the information that's required by what is now 7105 and was then 4005. I have a problem with some of the historical analysis that the Veterans Court did. I mean, first of all, the Veterans Court argued that this whole need for a specific allegation was somehow injected as a quid pro quo in 1962 for the fact that the RO had to give statements of its reasons or its decision.  The statute didn't change as it relates to these allegations as to the need for specificity. That was always in the statute predating it. Yeah. I'm not sure how much of the tenor of the majority's decision was focused on reacting to the dissent, but I think the point that Congress was making was that we were giving the veteran, especially in 1962 where there wasn't a requirement for any kind of detail in a regional office initial decision, we're going to give the veteran the benefit of a sort of more due process-oriented notice in what the basis of that decision was. At the same time, we're going to require that veteran. But it wasn't at the same time. I mean, that's the whole point. That is exactly what the lower court said is somehow this was a thoughtful balance. I see. Okay. Yes. Instead, the specificity allegation was in there, and what they did in 1962 was to make it even easier for the veterans to have information. Yes, that's a fair characterization. Going back to the creation of the board, if you will, there's always been a requirement, and I think we mentioned this in our papers, and it's either in 1935 or in 1962 or in 1980. The board was the appellate body within the VA, and there was a requirement, just like there is a requirement in this court to identify what it is that a claimant wants this court to do. But it's not an adversarial system. It's not an adversarial system. We have an adversarial system. And the regulation has always required that these statements be liberally construed. What about the VA manual, the M21 from 1962? Should we give that any deference? No, this is a plain language requirement. But the VA manual simply says, you know, that kind of addresses the question that didn't really happen here, which is if there's some doubt at the R.O. level, send it to the board, because it is their determination to make about whether or not the statement is adequate. So the question still remains. What about that issue? Judge Green addressed that issue, that the R.O. never let the board make the determination. Well, see, again, I think that this is the context part of the case. In 1980, I don't believe the R.O. was actually questioning or even considered that the March and May documents were intended to be VA Form 19s or their equivalent. Yeah, that's the problem. But the R.O. was simply saying we want a VA Form 19. I mean, what certainly is implied in what the R.O. did on June 23, 1980, is to suggest we don't have a substantive appeal, Mr. Ortiz. And that would include the fact that he's already sent two letters in, in March and in May. So in June, the R.O. indicates its view of the case, that it doesn't have what it would consider to be a substantive appeal. Right, but if those two letters had said, I believe, or either one of them had said, I believe that the evidence that I've submitted from the psychiatrist is sufficient to constitute new and material evidence, that would have done it, right? That might very well have done it. And therefore, the R.O.'s misconception that it needs a Form 19 is of no assistance to the R.O. in this case, if we conclude that what he submitted was the effective equivalent of that kind of statement in his letters, right? I don't see how the fact that the R.O. was sitting there waiting for another One-Nine helps your position. No, I think my position is slightly more, if you will, nuanced. All right. What the June letter is saying is that despite having received the March and May letters, we don't think those are VA Form 19s or their equivalent. So you still haven't answered the bell. Give us the equivalent of what's required by the statute. And that's what was not received. So it wasn't so much that a form wasn't provided with a VA Form 19 in the lower left-hand corner, but that based upon what the regional office had at the time, they didn't feel that any attempt had been made to identify what issue should be reviewed by the Board. Let's see if we can clarify this. There seem to be two requirements here. One is to indicate a desire to appeal, and the second one is the specificity requirement. The first one of those was satisfied, wasn't it? That's the Notice of Disagreement requirement. But that's what a Notice of Disagreement is. I don't know, but after the statement of the case, this correspondence was sufficient to say, I want to appeal, wasn't it? The first correspondence, I would say, I mean, again, we're getting into, assuming this Court's going to wade into these liberal construction of documents to try to determine, I mean, I think this is all application, frankly. You have to concede that he indicated a desire to appeal. He certainly, I think, probably has some kind of indication that there was a desire, that he thought his case was going forward somehow, somehow. Right. He said, I sent in the 1-9 already. Yeah, he said he sent something in, and I'm not going to send it in again. Right. The Veterans Court specifically found that whether a document constitutes a substance of appeal is reviewed de novo. Yes, they did, based upon Gibson and some prior cases. You didn't challenge that. We didn't file an appeal on that. I mean, frankly, in this case, although we agree, I think, I'm not sure where the Court's going to go with this, but we would agree with what seems to be a pretty straightforward discretionary standard provided by Congress to the Board. And so one would presume that an analysis of whether or not that standard was properly followed would fall under an abusive discretion review. But because the Court in this case used de novo, any error in the sense of using a more stricter standard would be harmless. The point is that, well, that's... Is there a due process problem with exercising a discretion that has existed since, well, most of the century and that's never been exercised before for the first time in a particular instance? In what sense would the process be failed? I mean, he was notified in this case. I mean, the June letter says, please give us a substance of appeal or your case will be closed. So he was informed of what he needed to do, and he didn't do it. But the standards applied to him are different than the standards that were applied in the past, correct? I don't know. I mean, there have been other cases, I think, where whether the Veterans Court was applying whatever standard it did, that they found that their substantive appeal was either adequate or not adequate, or the Board before that had found that appeals were adequate or not adequate. I don't know if this is the first case. I don't think it can be said that this is the first case where the Board exercises discretion to find a particular response to be inadequate. I mean, you know, I'm trying to think what the due process implication would be. As long as the statute itself provides or puts anyone on notice that a failure to provide specificity could result in a dismissal of the appeal. Could the Board practice over the course of 50-plus years change the notice that is given? I'd have to, I mean, we didn't actually analyze the results of the Board practice over the 50 years to determine how many cases they determined were insufficient versus sufficient. But again, to the extent that you're finding anything insufficient, it's only happened in very recent times, correct? This is a new trend. Well, this seems to be one of the few cases in which the discretion was exercised. I mean, it seems to me that in several of the cases, yes, the Board, or at least the Veterans Court in its decisions has found or raised questions about the Board's determinations about sufficiency. Certainly, I think in Evan's case, the Board found that it was insufficient and the Veterans Court overruled them. Does the government agree with the Evans case? In what aspect, Your Honor? The holding that if you check all the bonds, that's sufficient. We have in a position, I mean, I can give you my personal opinion. I can't give you the government's position. I'm not sure where this is in the process of whether or not it's even being considered for further review. I tend to agree with more of the logic of the dissent than I do with the holding of the majority. I don't think that the form is ambiguous at all, and I do think that when someone checks one box, it says I'm doing everything, but then everything else indicates that he's only appealing three of the six issues, and then at the hearing follows that up with, again, saying I'm only appealing three of the six issues, although perhaps the administrative judge presiding at the hearing could have been a little bit more forthcoming. Well, in a single-issue case like this. See, now, I'm glad you brought that up. Now, let me finish. In a single-issue case like this, why wouldn't it be an issue for the board to say that you have to specify the issues since there was only one issue in the case? I think that would be a question for the reviewing body who's reviewing them under an abusive discretion standard to determine whether that was appropriate. However, as the Veterans Court has held in this case, this is not a single-issue case. This is a single-claim case, but it could be a multiple-issue case, and I refer again to the appendix at 10. So in almost any single-claim case, you could have multiple issues. Was the evidence sufficient? Was there some misanalysis by the board or the regional office on that evidence? A couple of the examples provided by the board. What did the statement of the case say? What did the statement of the case say? How many issues did the statement of the case identify? The statement of the case focused on the fact that he hadn't submitted new material evidence. Yeah, that's one issue. The statement of the case characterized it as one issue. The fact, though, remains that the statute, I mean, I'm not, I refer to the, I think the statement of the case focuses on that. Isn't that correct? The statement of the case just has one issue, right? Best evidence of its context. But the statute requires that the claimant provide specific allegations of error of factor law, and it's up to the veterans court, or I mean, excuse me, the board to determine whether that's sufficient. And most of the time they probably would find, you know, it's not something that comes up that often. But in this case, certainly, they found that it wasn't sufficient. And our position is to the extent the court agrees that this authority is vested with the board, then any further review by this court would be outside its jurisdictional limitations because it would require this court to go in and essentially re-evaluate those forms and determine whether or not they are sufficient under the statute. And that sounds to us like an application question. Go ahead. The, what to me is the core portion of the veterans court's opinion, the court says we agree that the 1980 letter identified the general claim of service connection and it was understandable that Mr. Ortiz was contesting whether new and material evidence had been submitted to reopen the prior denial of that claim. To be clear, however, that misses the mark. It is not sufficient for Mr. Ortiz to merely identify his claim, but he must state whatever was committed. Now, I would think that if he is contesting whether new and material evidence had been submitted, that that is not only the claim, but also the assertion of the theory. That is to say, my theory is that this was sufficient. This was evidence of new and material evidence. Isn't it? I mean, what is the difference? When you are talking about sufficiency of a submission, what is the difference between the claim and an argument in support of the claim, other than saying my argument is that my claim is correct? Well, again, I mean, I think Congress certainly allowed the Board to make a determination about whether or not it had been apprised of the issues on appeal. Yeah, but the Veterans Court is saying that the Board was apprised of the fact, and I'm reading from page 10. Yeah, on page 10. You know where I am. Okay. Page 10 about the first full paragraph. The Court is saying the Board knew, in effect, that he was contesting whether new and material evidence had been submitted to reopen the prior denial of the claim. Now, that seems to me we're stuck with that as what the Board knew, at least as the Veterans Court views it. The Veterans Court says that's not enough, and my question is why isn't that enough in the context of a sufficiency claim? It's true, as the Court went on to say, he might have had other objections, evidentiary questions, this, that, and the other, but they're saying this was known, and that is the claim he's attempting to pursue. Why isn't that sufficient? I think that the follow-up is the answer to that question, in that there are many potential issues that could have been raised. It seems to us, looking back at it, that that is the only issue that he was looking at, and maybe even at the time one might suggest that there couldn't really be any of these other issues, but the fact remains that he didn't identify with any specificity any allegations. No, the fact that he didn't identify other issues doesn't mean that he didn't identify this by stating his claim. And the one that the Court characterized. Yes. I think, though, that what, I mean, the first part of that, what the claim is, that's what the notice of disagreement is. That, to us, is a fundamental problem here when you allow the state substantive appeal to equate, to be equated with the notice of disagreement. The notice of disagreement is I'm upset. That's really what his frustration was here. I'm not happy with the original decision. And the March and May 1980 documents continue that theme, that I'm not happy with the decision, but they make no attempt to provide any rationale or explain what it was about them that it wasn't happy. Now, I understand the Court's characterizing this as a one-issue case, but I think it's fair to, it was fair in this case for the Veterans Court to understand that the statute requires more and places a risk upon the claimant that, to the extent no specificity is provided, the Board may dismiss. You're arguing that the Veteran has to be more specific than the statement of the case. Possibly. I mean, the statement of the case is the VA's view, and the Veteran has to respond to that statement of the case. And D-3 says, or suggests strongly, that you should focus on what aspects of the statement of the case that you're not favorable with. And then at this time. That's a hard argument. But at this time, even, I mean, recall at this time, D-4 is different than it is today. A failure to identify any factual errors in the statement of the case is viewed at this time as conceding that those statements in the statement of the case is correct. Now that's changed since the, you know, the 1980 timeframe. But at the time that this was written, there was a burden upon a claimant to say something about the statement of the case, identify those aspects of it that, to which he disagreed. But that's very different from saying that he has to be more specific than the statement of the case itself. If the statement of the case identifies an issue, you're saying, well, that's not, you can't say I disagree with that. You have to go behind that issue, break it up into little sub-issues, and say what he objects to. That's pretty hard to argue. I think what we're, I'm saying in that sense, specific means what about the statement of the case are you upset with? Not that he needs to, you know, necessarily create sub-issues. But at least identify what it is. And here he doesn't. I have one last question for you. While it's not controlling authority, I think it's an important question. The Veterans Benefits Manual says that, curiously, in the past, nearly all veterans law judges, including board members, accepted a blank signed VA Form 9 as encompassing all issues set forth on a statement of the case. Is that true? I'm not sure if that's true or not. A blank form would have been better than a letter saying I'm unhappy with my case? I can't, I mean, I don't have a factual response to that statement. But we could look it up and provide it and see what the basis of that statement was. Obviously, as the Court knows, it's not controlling. We don't deny that the VA goes out of its way to try to assist claimants and is very liberal in its views of what is sufficient. In this particular case, the board held that what was provided wasn't sufficient. So it's really not, I mean, it sounds like it's not just magic words, but it's magic forms. The new form certainly goes some length along those lines where it allows, I mean, this form doesn't have one of those boxes that says I'm challenging everything, whereas the new form does. And you're familiar with that as attached to the Evans decision, and that had other problems. But, oh, actually the form we think is fine. But certainly the practice of the VA is consistent with its manual that says that they will try to accept, you know, anything that gets close to the requirements. Very well. Thank you, Mr. Hagee. Mr. Connelly, to restore your rebuttal time. I think, Judge O'Malley, to your point, in the nearly 80 years that this type of provision has been in effect, going back to the 30s when the regulation went into effect and the board was created, this is the first case to be raised at the appellate level past the Veterans Court. At the Veterans Court in the past 80 years, this issue appears to have only come up twice, and those are the two cases cited in the parties' briefs. And so, yes, the Veterans Benefits Manual is correct that the historical practice for 80 years has been to accept blank Form 9s, to not require the level of specificity that the government and the Veterans Court required in this case. And that goes not only, I think, to the abuse of discretion point and the due process point, but also to what is the understanding of the statute itself and what is the understanding of the board's duty to develop the veterans' claim. And so they are all part and parcel in that, yes, the due process point as to the board's change of heart as to how it's going to exercise discretion is one way to understand the historical practice. And another way is just that the statute has never been interpreted that way. It was never understood that way when it was enacted and has not been understood that way for as long as it's been in force. The other thing that I would point out, both from the government's brief and from the argument right now, is that the government's quote-unquote standard is ungovernable. It does not provide any precision or specificity. And because in many respects it requires more than what the VA required between 1933 and 1962, and it also requires more in this case than what the statement of the case itself at Appendix 199. The issue underlined in the statement of case is characterized as the sufficiency of the evidence in support of the claim to reopen. And that, the Veterans Court found, the board was aware that Mr. Ortiz was alleging an error in the determination of that issue. I think one of the other points that was made was that the R.O. in 1979, the R.O. did not require a Form 9, but that it made an adjudication that the correspondence was not sufficient and therefore asked for a Form 9. There's no evidence in the record of that. There's no decisional basis for the R.O. making an adjudication that the correspondence was insufficient. And in any event, the R.O. was not permitted statutorily and as a matter of regulation to make that determination because the R.O.'s duty was simple. Once any correspondence was received after the statement of the case, to forward that correspondence to the board. That was the statutory requirement and the regulatory requirement. And for the board to assess, as a threshold matter, A, whether the allegations were sufficient to meet the standards set forth in 405D3, and then to exercise and to explain the basis for the exercise of a discretion in the event that it decided that the allegations were not sufficient. Thank you. Is it correct to assume that you are appearing here on a pro bono basis? Yes, I am. The court appreciates your service to your client and the court. Thank you. Case is submitted.